UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

BRENT MICHAEL VREELAND,

       Defendant.
                                      /

Case Nos.  1:09:CR:130; and
                1:04:CR:232-06

HON. GORDON J. QUIST

## **DECISION PURSUANT TO FED. R. CRIM. P. 23(c) and 32.1(b)(2)**

On October 22, 2009, this Court tried Defendant, Brent Michael Vreeland in Case No. 1:09:CR:130, on two counts for having, in essence, lied to his probation officer while Defendant was on supervised release, in violation of 18 U.S.C. § 1001(a). A parallel petition for having violated supervised release has also been filed in Case No. 1:04:CR:232-06 regarding Defendant's prior conviction before this Court, and the findings in this case will be adopted as the findings in the parallel case.

Pursuant to the request of the parties and the consent of the Court, this matter was tried to the Court without a jury. Fed. R. Crim. P. 23. The Court recognized, as did the parties, the different rules of evidence that can be applied in substantive trials and supervised release revocation hearings. The Court and the parties also recognized the different burdens of proof that the government has when trying an indictment as distinguished from alleged violations of supervised release.

This document contains this Court's findings pursuant to Fed. R. Crim. P. 23(c) and 32.1(b)(2).

As to **Count 1** of the Indictment, which charges Defendant with making a false statement to the United States Probation Office on or about October 3, 2008, in violation of 18 U.S.C. § 1001(a), the undersigned makes the following findings of fact plus those findings that are under the findings regarding Count 2 of the Indictment:

1. On October 3, 2008, Defendant met with his Probation Officer, Nicholas Bobo, and was asked if he was involved in or knew anything about an alleged unlawful entry and home invasion in the Pointe Apartments (which are located on Jefferson Commons Circle, Kalamazoo, Michigan) and an assault with a motor vehicle in the early morning of February 9, 2008. Defendant denied any knowledge.

2. The statement set forth in paragraph 1 was false when made, and Defendant knew it was false. In fact, Defendant had been involved in an illegal break-in at 5802 Jefferson Commons Circle, Kalamazoo, Michigan, in the early morning hours of February 9, 2008, along with Rodney Russell. During the break-in, Defendant and Mr. Russell stole and removed personal property belonging to the residents of the apartment. This finding is supported, among other things, by the

testimony of Rodney Russell, which this Court finds credible, plus the testimony of Leah Harris and Rachael Psujek, who testified regarding the items that were missing from their apartment, plus the testimony of Daniel Ivens, who testified as to having seen Defendant and Mr. Russell together earlier the morning of February 9, 2008, plus the testimony of Mr. Ivens and Mark Johnson as to seeing a black male and a white male walking or running with things and appearing as though they had stolen something, plus the attempt to stop those who were trying to get away, plus the identification of the sedan as belonging to Defendant's grandmother as the vehicle used to get away from the apartment complex, plus the Defendant's disposing of that vehicle after having told Rodney Russell that he had to get rid of the vehicle.

Furthermore, Defendant lied to his probation officer when he denied knowledge of a vehicle having struck someone while the vehicle was leaving the apartment complex. This finding is supported by the testimony of Daniel Ivens, who was struck by Defendant's grandmother's car, by the testimony of Rodney Russell, who was in the vehicle when it struck Mr. Ivens and who noticed the striking and heard Mr. Vreeland say that he struck someone, plus the testimony of the witnesses who identified the vehicle.

3. The statements made on October 3, 2008, were material because if Defendant had told the truth, he would have been guilty of having violated a term or condition of supervised release in that he would have been guilty of at least one state crime - i.e., unlawful entry.

4. The statements to Mr. Bobo were made knowingly and voluntarily. Defendant was not in custody when he saw his probation officer, was experienced in dealing with probation officers, and left freely after having spoken with his probation officer. This finding is supported by the testimony of Mr. Bobo. This finding is also supported by the testimony of Rodney Russell who testified that Defendant told him (Russell) that they would have to make up a story to avoid trouble. Defendant was following through on his plan to lie about what happened on February 9.

5. The matter is within the jurisdiction of the United States in that the wrongful conduct occurred within the Western District of Michigan and the representations were made to a probation officer in this district.

As to **Count 2** of the Indictment, which charges Defendant with making a false statement in writing to the United States Probation Office in the Western District of Michigan, the undersigned makes the following findings of fact plus the findings that are under the findings regarding Count 1 of the Indictment:

1. On October 3, 2008, Defendant, in writing, represented to Probation Officer Bobo that he did not know the person depicted in pictures presented to him. That person was Rodney Russell.

2. The written statements set forth in paragraph 1 were false because Defendant actually knew Mr. Russell, as was testified to by Mr. Russell, who was a credible witness, and supported by records showing numerous telephone calls between Defendant and Mr. Russell during the critical events of February 8 and 9, 2008.

3. The statements regarding Defendant's knowledge of Mr. Russell were material because there was evidence that Mr. Russell was also involved in wrongfully entering into the apartment in the Pointe Apartments complex and stealing things from the apartment. Wrongfully entering into the apartment violated the third paragraph of the General Conditions of Defendant's supervised release because it constituted a state crime to have broken into the apartment.

4. At the time Defendant made the statement, Defendant knew that he was lying, had known Mr. Russell for a substantial period of time, and acted willfully in lying when he wrote that he did not know Mr. Russell. This finding is supported by the testimony of Mr. Russell, who testified credibly on this matter, by the records of telephone calls between

Defendant and Mr. Russell, and by the Defendant and Mr. Russell being together as testified to by other witnesses, including Mark Johnson, who obtained the license plate number of the vehicle which was traced to Defendant's grandmother, by the fact that Defendant repeatedly identified this vehicle as his vehicle on this monthly probation reports and then abandoned the vehicle after telling Mr. Russell that he would have to get rid of the vehicle.

5. The statements were made wilfully and voluntarily. No one forced Defendant to make any statement. This is supported by the testimony of U.S. Probation Officer Nicholas Bobo and Defendant's written notes that he did not know Mr. Russell.

6. The matter is within the jurisdiction of the United States in that the wrongful conduct occurred within the Western District of Michigan and the representations were made to a probation officer in this district.

Therefore, the Court concludes beyond a reasonable doubt that Defendant is guilty of having violated Counts 1 and 2 of the Indictment.

## DEFENDANT'S LEGAL ARGUMENTS

Defendant, however, argues that there are two reasons why he cannot be held liable for having lied to his probation officer: (1) he says that he was not given his *Miranda* warnings, and was forced to incriminate himself in violation of his Fifth

Amendment rights by being given a wrongful choice of either incriminating himself or violating a term of his supervised release by not telling the probation officer the truth about his involvement in the break-in; and (2) 18 U.S.C. § 1001(b) exempts statements in a judicial proceeding from prosecution under 18 U.S.C. § 1001(a).

**Fifth and Sixth Amendments**

Defendant's first objection attacks the federal court's standard terms and conditions of supervised release. General Condition 3 requires the supervised person to answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer. Standard Condition #3. Failure to answer these questions, so the argument goes, would be a violation of the terms and conditions of supervised release subjecting Defendant to further incarceration. The Court agrees as to the fact that further incarceration is possible if a defendant refuses to answer questions by his probation officer. However, the Court finds as a matter of fact that this particular defendant was never in custody so as to implicate his *Miranda* rights. As Mr. Bobo testified, he had received a telephone call from a Mr. Gagie, who informed Mr. Bobo that he (Gagie) did not represent Defendant.[1] Mr. Bobo further testified, the documents show, and the Court finds that Defendant was a frequent visitor to a probation officer, and on the occasion in question spoke with Mr. Bobo in an office

---

[1] To the extent that Defendant argues a violation of his Sixth Amendment right to counsel, the Court finds as a matter of fact that Defendant was not charged with any crime relating to the February 8 and 9, 2008, events at the time he met with Officer Bobo. Thus, Defendant's Sixth Amendment right to counsel was not violated. *See Kirby v. Illinois*, 406 U.S. 682, 92 S. Ct. 1877 (1972).

7

where the door was wide open, and Defendant could have walked out of the door if he had wished to do so. Furthermore, Defendant had been informed of his right not to incriminate himself when he pled guilty to an offense in Docket # 125. Defendant could have invoked his Fifth Amendment and Sixth Amendment rights if he had desired to do so, but he did not. As a matter of fact, Defendant's statements to Mr. Bobo were voluntarily made pursuant to a scheme Defendant had already cooked up and was urging Mr. Russell to buy into – they did not know each other, they did not break into the apartment, they did not bump into anyone with the car, they did not throw the stolen items in the pond, and they did not conspire to get rid of Defendant's grandmother's car. Far from being forced to answer any question, Defendant was volunteering lies to keep state and federal officers from charging him with more crimes.

In addition, the cases upon which Defendant relies are not directly on point. Defendant puts much emphasis on *Minnesota v. Murphy*, 465 U.S. 420, 104 S. Ct. 1136 (1984). However, in *Minnesota v. Murphy* the defendant was not charged with lying to his probation officer. Rather, defendant in that case was charged with an earlier crime that he committed and then confessed to the probation officer. 465 U.S. at 422-26; 104 S. Ct. at 1139-42. In *Murphy*, the Court found that there was no violation of Murphy's Fifth Amendment privilege against self-incrimination because

Murphy volunteered the information and failed to timely assert his Fifth Amendment privilege. 465 U.S. at 440; 104 S. Ct. at 1149.

Defendant cites language in *Murphy* discussing the penalty exception to the general rule that the privilege must be claimed when self-incrimination is threatened. (Def.'s Br. at 3.) Defendant contends that a probationer faces a penalty situation, and the privilege thus becomes self-executing when the probationer is required to "'choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent.'" (Def.'s Br. at 3 (quoting *Murphy*, 465 U.S. at 438, 104 S. Ct. at 1147).)

However, a probationer is not placed in a penalty situation "unless a state overtly threatens to revoke probation in retaliation for the legitimate exercise of the self-incrimination privilege." *United States v. Humphrey*, 34 F.3d 551, 555 (7th Cir. 1994) (citing *Murphy*, 465 U.S. at 438, 104 S. Ct. at 1148). Here, Mr. Bobo testified that he did not threaten arrest or a supervised release violation during the October 3, 2008, meeting with Defendant, and the Court believes Mr. Bobo. Furthermore, "[w]hile the Fifth Amendment may protect the defendant's right to remain silent, it does not give him the right to lie once he chooses to speak." *United States v. Williams*, No. 07-6358, 2009 U.S. App. LEXIS 4921, at *9 (6th Cir. Mar. 9, 2009) (citing *Brogan v. United States*, 522 U.S. 398, 404-05, 118 S. Ct. 805, 810 (1998)

9

("[N]either the text nor the spirit of the Fifth Amendment confers a privilege to lie.")). Therefore, the Court is not persuaded by Defendant's first legal argument.

## 18 U.S.C. § 1001(b) Exception

Defendant also argued that his statements to Mr. Bobo cannot support a conviction under 18 U.S.C. § 1001 because those statements are inadmissible under § 1001(b). 18 U.S.C. § 1001(b) provides that "subsection (a) does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding." 18 U.S.C. § 1001(b). The issue here is whether a meeting between a person on supervised release and that person's probation officer is a "judicial proceeding" and whether statements made to a probation officer are "statements, representations, writings, or documents submitted by such party or counsel to a judge or magistrate in that proceeding."

The easy answer would seem to be that a probation officer is not a judge or magistrate in a proceeding. But neither is a courtroom deputy nor clerk to whom a litigant might submit material with the reasonable expectation that it be passed on to a judge. In this latter circumstance the deputy or clerk is exercising a non-discretionary administrative function as a facilitator. That being said, there is no real expectation that material being submitted to a probation officer by someone on

supervised release will be submitted to a judge. Probation officers interview numerous people under their supervision without day to day involvement of judges. The only time, for the most part, that a probation officer involves a judge is when the officer believes there was a violation, when supervision is to terminate, or when the officer is seeking guidance on a particular matter. Otherwise, judges do not see the monthly reports, financial statements, etc., being submitted by those on supervised release.

In the supervised release and probation context, false statements fall within § 1001(b)'s exclusion when the probation officer is required by law to submit the statement to a judge. *See United States v. Horvath*, 492 F.3d 1075, 1081 (9th Cir. 2007) (holding that § 1001(b)'s exception applied where the probation officer was required by law to include the false statement in the presentence report that was submitted to the judge). However, when the probation officer exercises his discretion in making a recommendation, any false statement to the probation officer does not satisfy § 1001(b)'s exclusion because the probation officer is not acting as an agent of the court. *See United States v. Manning*, 526 F.3d 611, 621 (10th Cir. 2008) (holding that § 1001(b)'s exception did not apply where the probation officer exercised his own discretion in deciding whether to include the probationer's false statement in the presentence report). When a probationer violates the conditions of

his release, a probation officer has the discretion to seek revocation of the probationer's parole. *See* 28 C.F.R. § 2.48 (2009).

Under these circumstances, the Court concludes that statements made to Mr. Bobo by Defendant on October 3, 2008, were not statements made or documents submitted to a magistrate or judge. They were made and submitted to a probation officer. Furthermore, this Court concludes as a matter of law that a meeting between a probation officer and a defendant under supervision is not a "judicial proceeding" within the meaning of the statute. Finally, this Court concludes as a matter of law that Mr. Bobo exercised his own discretion in seeking to revoke Defendant's parole, and 18 U.S.C. § 1001(b) does not apply to the facts of this case because Mr. Bobo was not acting as an agent of the Court. *See Manning*, 526 F.3d at 621. Accordingly, the Court rejects Defendant's second legal argument. Therefore,

**THE COURT HEREBY CONCLUDES** beyond a reasonable doubt that Defendant is guilty of Counts 1 and 2 of the Indictment.

Furthermore, for the reasons set forth above:

Defendant is found guilty of Violation Nos. 1, 2, 3, 4, and 5 of the conditions of his supervised release, namely: 1) Committing the state crimes of home invasion in violation of MCL § 750.110a(2); 2) unlawful entry in violation of MCL § 750.115; 3) assault of Daniel Ivens in violation of MCL § 750.82; 4) making false statements

to his probation officer, Nicholas Bobo, in violation of 18 U.S.C. § 1001(a)(2); and 5) willfully making and using a written document, knowing the same to contain materially false statements in violation of 18 U.S.C. § 1001(a)(3).

An Order will also be entered.


Dated: November 12, 2009                            /s/ Gordon J. Quist
                                                             GORDON J. QUIST
                                             UNITED STATES DISTRICT JUDGE